**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Steven MORRISON, Defendant-Appellant.**

**No. KCD 28104.**

Missouri Court of Appeals,
Kansas City District.

Nov. 29, 1976.

Motion for Rehearing and/or Transfer
Denied Dec. 23, 1976.

Application to Transfer Denied
Feb. 14, 1977.

J. Martin Kerr, Independence, for defendant-appellant.

John C. Danforth, Atty. Gen., Nanette Laughrey, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

This case is one of two in which the same defendant was tried and convicted of separate offenses involving the sale of controlled substances. The offenses both occurred during a two-day period. This appeal involves the first tried of the two offenses. The appeal from the second conviction is decided contemporaneously in *State v. Morrison* (Mo.App.1976) [No. KCD 28103 handed down November 29, 1976].

This appeal involves the case tried in April, 1975, in Sullivan County. Involved is the sale of a controlled substance, amphetamine, on May 1, 1974. A state highway trooper, working under cover, purchased 100 amphetamine tablets from the defendant on that date for $15.00. The jury, on the basis of the trooper's testimony and that of a forensic chemist employed by the

State, found the defendant guilty and assessed punishment at a term of five years.

Since the entire circumstances of the offenses are interrelated on these appeals, a recital of the entire factual background will be useful in understanding the issues raised.

The highway patrolman first contacted the defendant in a bar in Brookfield, Missouri, on May 1, 1974. On the occasion of that first contact, the defendant sold the patrolman the 100 tablets affording the basis for the instant case. During the course of this transaction, the defendant indicated a willingness and capability to furnish much larger quantities of drugs. An arrangement was then made for a meeting the next night, at which time the patrolman purchased 1,000 amphetamine tablets. At that time, the defendant furnished the patrolman with a list of available drugs and prices. This subsequent sale is the subject of the second appeal decided contemporaneously, *State v. Morrison, supra* [No. KCD28103 handed down November 29, 1976].

The instant case was brought by indictment in Linn County. Upon defendant's motion, the venue was changed to Sullivan County, and the judge of the circuit was disqualified. Both the trials were on change of venue and judge. There was apparently an agreement that both causes be transferred to Sullivan County, and both were tried in that county before the same judge.

Upon the trial in Sullivan County before a jury and the special judge transferred to hear the case, the patrolman described the sale and made an in-court identification of the defendant and described him as having longer hair and a beard at the time of the sale. The prosecutor then had identified a picture of the defendant, marked as Exhibit 1. This picture is a full-length front and side view of the defendant. In the front view, a card bears the legend, "Mo. S. H. Patrol TROOP B 6–2–74." The State's case went forward with proof of the chain of custody of the drugs and proof of the nature of the substance by a chemist. As

noted, the jury convicted and imposed a five-year sentence.

Defendant's first claim of error is that the court erred in admitting into evidence and permitting the jury to view the photograph of the defendant. It is questionable that the record made at the time the exhibit was offered is sufficient to raise the issue of error in permitting the jury to view the photograph. In any event, that issue was not raised in the motion for new trial. Defendant seeks review under Rule 27.20. Defendant makes two contentions of error. His first contention is that the jury may have seen a legend on the reverse of the photograph which referred to two charges of selling controlled substances (amphetamines). This is totally without merit. The transcript in this case discloses the exhibit was affixed to a sheet of cardboard, and the back of the exhibit is not visible.

On the other branch of the defendant's argument that the "tag" appended to the picture constituted an improper use of a "mug shot," defendant cites *State v. Poor*, 533 S.W.2d 245 (Mo.App.1976), as setting forth the standards for use of such photographs. *Poor* held such a photograph admissible on exactly the theory the State pursued in this case, to buttress the identification testimony where the physical characteristics testified to by the identifying officer had been questioned, in this instance, by the alteration of facial hair and hairstyle. Defendant seeks to find a holding in *Poor* that the State be required to show that the photograph was taken in "connection" with the instant offense. He claims that the jury may have inferred that other offenses were involved because the legend would suggest such other offenses unless the photograph was related to the present offense. *Poor* did not lay down an ironclad rule that the State must prove a connection with the pending charge to permit the introduction in evidence of such a photograph. Each use of such photographic evidence must be examined in the light of the facts and circumstances of each case. The date on the photo was *after* but close in time to the offense charged. The photograph shows it was

made by the agency investigating the offense. There was no reference of any sort to other offenses at or near the time of the photograph. Under the mandate of Rule 27.20, that "manifest injustice" appear, the facts of the whole record in this case show conclusively this defendant is entitled to no relief on this claim.

Defendant also questions the validity of the venire on the ground that women were systematically excluded from the panel. The defendant concedes there was no motion to quash and no claim of error in the motion for new trial. The request is that this court determined that the failure of the trial court to act *sua sponte* be considered as plain error. The difficulty is that the basic facts are not in the record. There is not one iota of the evidence necessary to sustain such a challenge, the number of females in the county available for jury service, the number selected or the number who may have chosen not to serve. It would be the purest speculation to say that this jury panel was not representative. The burden of this proof was on the defendant. *State v. Amerison*, 399 S.W.2d 53 (Mo.1966). His assertion does not prove it, *State v. Kelly*, 506 S.W.2d 61 (Mo.App.1974), much less convict the trial judge of error in failing to discharge the panel on his own motion.

Defendant next complains that the trial court should have discharged the jury panel on his own motion because of incidents which occurred during the voir dire, again asserting this as a matter of plain error under Rule 27.20. No such motion was made to discharge the venire or to seek a continuance of the cause at the time of the voir dire examination. The motion for new trial asserts that the court erred in failing to continue the cause, but no such request appears to have been made at the time of the incidents complained of. The incidents complained of were responses of a large number of the jurors to questions concerning their ability to give equal weight to the testimony of a state highway patrolman and other witnesses. Many of the jurors indicated that they would give greater weight to the testimony of the patrolman. When this occurred, the trial judge on his own initiative read a portion of the credibility instruction to the jury and reminded them that they would be instructed later in exactly the same language and that the instruction was the law by which they were bound. Nonetheless, many of the jurors who had indicated a bias towards the testimony of an officer, continued in their assertion of that belief and the trial court promptly and properly excused all of them for cause. Defendant does not complain that any juror who indicated such a bias served. The gist of his complaint is that the responses of the jurors to those questions were so frequent and determined that the attitude expressed by the excused jurors created a bias and prejudice in favor of the highway patrolman who was, of course, the sole and only witness to the defendant's criminal behavior. The defendant concedes that he has the burden of demonstrating that the trial court erred and abused his discretion with respect to the control of voir dire examination. *State v. Clark*, 509 S.W.2d 740 (Mo.App.1974). In the instant case, the defendant propounded the questions to the jury which resulted in the responses of which he now complains. An examination of the entire voir dire and the fair, open and candid responses of the jurors as well as the trial court's prompt and correct action in excusing those who had demonstrated a set of mind which disqualified them as jurors in this cause does not demonstrate an abuse of discretion by the trial court. Thus, defendant's claim of plain error fails at the threshold, there being no error. The point is denied.

The last claim of error is that the trial court erred in refusing to sustain the defendant's objection to the prosecutor commenting on the failure of the defendant to produce a chemist. The defendant had sought and obtained permission to have the substance alleged to be amphetamine tested by a chemist of his own choice. Prior to voir dire, the State was possessed of the name of the chemist to whom the defendant had submitted the substance for testing

and inquired of the jury panel concerning their knowledge of the individual who had tested it. In the closing argument, the prosecutor pointed out that the chemist had not appeared and asserted that no one had come forward to dispute the State's proof that the substance was amphetamine. First of all, the chemist employed by the defendant to examine the substance was clearly not "equally available" to the State and the defendant. He was an expert employed by the defendant and "availability," defined in *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 648 (1942), " '. . . does not mean merely available or accessible for the service of a subpoena . . . a witness may be said to have been peculiarly "available" to one party to an action . . . when, because of such party's opportunity for knowledge of or control over the witness, or the community of interest between the two, or the prior statements and declarations of the witness, it would be reasonably probable that the witness would have been called to the trial to testify for such party except for the fact that it was either known or feared that his testimony on the stand would have been damaging rather than favorable.' "

Defendant seeks to convert this proper comment of the prosecutor on the failure of a defendant to call a witness on a fact in issue in the case to an infringement of the defendant's right not to incriminate himself. Defendant argues that since the substance was in fact amphetamine, the comment amounts to forcing the defendant to call the chemist to prove one of the facts necessary to incriminate him and, therefore, is a violation of his constitutional right under the 5th Amendment because it "would be tantamount to forcing one to testify against himself." The State argues that there is no "direct reference" to the defendant's failure to testify but that, too, is wide of the mark. The issue here is whether the State will be allowed to comment upon the failure to appear of a witness available to the defendant within the test of *Collins*. Defendant created the witness by requesting an examination of the substance. Having put himself in the position of having a

witness within his peculiar control, defendant must suffer the consequence of failing to call that witness to testify. It would be a false issue to infer that the comment of the State on that witness's failure to testify constituted violation of the defendant's right against self-incrimination.

Judgment affirmed.

All concur.