Kenneth PRESLEY,
Movant–Respondent,

v.

STATE of Missouri, Appellant.

Kenneth PRESLEY, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 15177, 15188.

Missouri Court of Appeals,
Southern District,
En Banc.

April 15, 1988.

Motion for Rehearing and/or Transfer
Denied May 2, 1988.

Application to Transfer Denied
June 14, 1988.

Ronald A. Conway, Springfield, for Kenneth Presley.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for the State.

FLANIGAN, Judge.

Movant Kenneth Presley and the State of Missouri filed separate appeals from the trial court's order, entered after evidentiary hearing, sustaining with respect to one ground, but overruling with respect to the other grounds, movant's Rule 27.26[1] motion to set aside a judgment and sentences for seven sexual offenses. The convictions were based on a jury verdict returned after defendant was tried on a multi-count information. This court affirmed the convictions, *State v. Presley*, 694 S.W.2d 867 (Mo.App.1985). The two appeals have been consolidated in this court and the appeal of the state, taken pursuant to § 512.020 (see Rule 27.26(j)), will be considered first.

The trial court's order vacated the judgment containing the convictions and granted movant a new trial on all counts of the information. The ground on which the trial court based its order was that movant was denied effective assistance of counsel at the jury trial in that his counsel failed to challenge for cause venireman Francis Cates who, following voir dire examination, sat as a member of the jury. The state's appeal challenges the trial court's ruling with respect to that ground.

It is the position of the state that the trial court erred in granting movant relief because: (a) even if counsel's failure to

---

1. Except where otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

Rule 27.26 was repealed, effective January 1, 1988, by order of the Supreme Court of Missouri, see 721–722 S.W.2d (Missouri Cases) XXV, and new rules were adopted in lieu thereof.

On the instant appeals, post-conviction relief continues to be governed by the provisions of Rule 27.26, because the sentences were pronounced prior to January 1, 1988, and movant's motion under Rule 27.26 was then pending. See Rule 29.15(m), effective January 1, 1988, 721–722 S.W.2d (Missouri Cases) XXV, XXXI.

challenge for cause venireman Cates was a mistake, the record fails to demonstrate prejudice, and a showing of prejudice is required by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2066[15], 80 L.Ed.2d 674 (1984); and (b) the ground on which the trial court granted relief, improper jury selection, may not be considered in this Rule 27.26 proceeding because movant waived it by not raising it on his direct appeal from the jury trial.

The material events took place during the voir dire examination segment of the jury trial. In response to defense counsel's inquiry, "Anyone else ever been a victim of a crime?", venireman Cates replied that "seven years ago" his home was burglarized, "the businesses have been broken into several times and one armed robbery, and my daughter was exposed by an exhibitionist about three years ago that we reported." The following colloquy then took place:

> "DEFENSE COUNSEL: Were you in your place of business when you had the armed robbery?
>
> VENIREMAN CATES: No.
>
> DEFENSE COUNSEL: Was it in the place of business?
>
> VENIREMAN CATES: Yes.
>
> DEFENSE COUNSEL: Anything about that or the burglary of seven years ago or your daughter's incident which would make you unable to sit in judgment fairly on my client, fairly today?
>
> VENIREMAN CATES: I don't, yes, I think I'd be a little partial to your client, or against your client.
>
> DEFENSE COUNSEL: You'd be partial to the state?
>
> VENIREMAN CATES: Right."

At the conclusion of the voir dire examination defense counsel made three challenges for cause, two of which were sustained and one, against venireman Fetter, was denied. None of those challenges involved venireman Cates.

At the motion hearing, counsel for both sides stipulated that the jury list, used by the trial judge at the jury trial, bore the comment "partial to state" opposite the name of venireman Cates, and that the comment was written by the trial judge during the voir dire examination.

At the motion hearing, under questioning by counsel for the state, movant testified as follows:

> Q. Did you hear your attorney call for the strikes?
>
> A. Yes.
>
> Q. Did you object?
>
> A. I objected to him striking Mr. Fetter instead of Mr. Cates.
>
> Q. Did you tell him that in court?
>
> A. Yes, I did.
>
> Q. In open court?
>
> A. Yes, I did.
>
> Q. Did you tell the court that you objected to that?
>
> A. No, he advised me to keep quiet, he was my attorney.

At the motion hearing, the state called the attorney who had represented movant at the jury trial. He testified that he remembered venireman Cates and that he had made notes while conducting his voir dire examination. Asked why he had not challenged Cates for cause, the attorney stated, "I looked at my notes today and it's my impression that I remember him saying he was not impartial.... I realize that in the transcript Cates said he could not be impartial. My notes and my recollection of what Cates said were different from what the transcript says.... I did say in my notes that certain veniremen were prejudiced, but I had no such notation by Cates' name.... I don't recall whether [movant] made objections to me at the time of voir dire on my failure to strike Cates.... When I read the transcript [of voir dire examination] last night and this morning, the transcript is different from what my recollection was. The reason I did not ask for [Cates] to be stricken was I believed at that time he was impartial."

The transcript of the voir dire examination mentioned by defense counsel was only a partial one when he testified at the motion hearing. Thereafter, Judge Donald Bonacker, who presided at the motion hearing after movant had disqualified the judge who had presided at the jury trial, obtained

a complete transcript of the voir dire examination. The complete transcript, admitted into evidence in the motion proceeding by agreement of the parties, contained nothing which would serve to rehabilitate venireman Cates from the partiality which he had candidly expressed.

Judge Bonacker's findings of fact included the following:

"8. The members of the jury panel, or Juror Cates in particular, were not asked at any stage of the voir dire examination whether they believed they could be or would be fair and impartial if selected as a member of the jury.

9. Juror Cates, frankly, intelligently, clearly and honestly answered all questions placed to him during voir dire examination and revealed he was partial to the state.

10. Defense counsel failed to request the removal of Juror Cates from the jury panel for cause.

11. Defense counsel was the sole counsel for Movant at the trial and the Court does believe that his duties in maintaining notes, mental and written, during his voir dire examination of the jury caused him to move to strike another juror from the panel for cause believing he was moving to strike the juror who answered as indicated above. The motion to strike another juror for a reason that could have been assigned to Juror Cates was denied.

12. This Court firmly believes the trial judge would have sustained a motion to strike Juror Cates, if the motion had been made.

13. ... [T]rial counsel wrote in his notes 'prejudiced in favor of State' next to the name of another juror and this court believes [defense] counsel attributed the statement of Juror Cates to another juror in his notes, by mistake. The trial judge did not correct defense counsel's identification of the juror making that response."

In this court the brief of the attorney general, representing the state on this appeal, states: "[T]here is little question that the defense attorney, based upon his notes taken during the voir dire examination, challenged venireman Fetter for the actual reason that would have supported a strike of venireman Cates." The state's brief also states that venireman Cates' comments "would certainly have provided support for a request to strike him for cause" and that "the record reveals a sad failure on the part of defense counsel, the prosecution, and the trial court, to further pursue this matter."

Appellate review in this proceeding is limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous. Rule 27.-26(j); *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984). For the reasons which follow, this court holds that the judgment of the trial court granting relief on the ground under consideration is not clearly erroneous.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court said at 104 S.Ct. 2064:

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

. . . . .

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in

the adversary process that renders the result unreliable."

At p. 2067 the Court said:

"In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. See *United States v. Cronic,* 466 U.S., [648] at 659, and n. 25, 104 S.Ct., [2039] at 2046–2047, and n. 25 [80 L.Ed. 2d 657 (1984)]. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.

. . . . .

Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice."

At p. 2069 the court said:

"Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

"A criminal defendant in a state court is guaranteed an 'impartial jury' by the Sixth Amendment as applicable to the State's through the Fourteenth Amendment...." *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 1020, fn. 6, 47 L.Ed.2d 258 (1976). "In essence, the right to jury trial guarantees to the criminally accused a jury trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

"An 'impartial jury' is one where *each and every one* of the twelve members constituting the jury is totally free from any partiality whatsoever." *Mares v. State,* 83 N.M. 225, 490 P.2d 667, 668[3] (1971). (Emphasis in original.) "... [A] trial by jury, one or more of whose members is biased or prejudiced, is not a constitutional trial." *State v. Stiltner,* 80 Wash.2d 47, 491 P.2d 1043, 1047 (banc 1971). "... [T]he right to trial by jury guarantees that each and all of those composing the jury be unbiased and without prejudice toward any party." *Isabelle v. Proctor Hospital,* 129 Vt. 500, 282 A.2d 837, 840[6] (1971).

Missouri cases dealing with a challenge for cause based on the prejudice of a venireman are consistent with the foregoing principles. A criminal defendant is entitled to a full panel of unqualified jurors before making his peremptory challenges. *State v. Hopkins,* 687 S.W.2d 188 (Mo. banc 1985); *State v. Zweifel,* 570 S.W. 2d 792 (Mo.App.1978). If for any reason, statutory or otherwise, a venireman is not in a position to enter the jury box with an open mind, free from bias or prejudice, he is not a competent juror. *State v. Carter,* 544 S.W.2d 334, 337 (Mo.App.1976). When it is shown that a venireman lacks impartiality, a challenge for cause must be sustained. *State v. Hopkins,* supra, 687 S.W. 2d at 190[4]. When a venireman states that he cannot be a fair and impartial juror, "[t]here is no stronger way a venireman can tell the court and counsel that he will not be the kind of juror every criminal defendant is entitled to have." *State v. Watson,* 595 S.W.2d 754, 758 (Mo.App. 1980).

Out-state cases dealing with a claim of ineffective assistance of counsel based on counsel's failure to challenge a venireman, and decided after *Strickland v. Washington,* supra, include the following: *Wicker v. McCotter,* 783 F.2d 487 (5th Cir.1986); *Isom v. State,* 284 Ark. 426, 682 S.W.2d 755, 757 (1985); *People v. Moody,* 676 P.2d 691, 696 (Colo. banc 1984); *Gordon v.*

State, 469 So.2d 795, 797 (Fla.App.1985); *Marsillett v. State,* 495 N.E.2d 699, 706 (Ind.1986); *State v. Pender,* 687 S.W.2d 714, 718 (Tenn.Cr.App.1984); *Parker v. State,* 693 S.W.2d 640 (Tex.App.1985). In those cases, except in *Gordon,* it was not established that counsel was ineffective.

In *Wicker* counsel explained his decision to accept the questioned venireman, and the court held that counsel reached a strategic decision "of the kind that able defense counsel frequently make. This is effectiveness, not ineptness." In *Moody* counsel plausibly explained his decision not to challenge a certain venireman as a matter of trial strategy. In *Marsillett* the court said that challenging a venireman is a matter of trial strategy and the failure to remove a venireman who has some relationship to the victim or the defendant, "without more," does not demonstrate ineffective assistance. In *Isom* and in *Pender* the court held that the petitioner failed to show that the venireman was biased and that he had a burden to do so. In *Parker* the court emphasized the importance of having a record showing the reason for counsel's failure to challenge the venireman but refrained from granting petitioner relief. The venireman had stated that if the defendant failed to testify she would assume that he was "hiding something." In *Gordon* ineffective assistance of counsel was found where counsel was guilty of several deficiencies including permitting a woman to sit as a juror when she had stated on voir dire that she was biased.

■ Citing *Strickland v. Washington,* supra, the state argues that in view of the strong evidence presented at the trial, movant makes no showing that but for counsel's alleged error the outcome of the trial would have been different. The state relies on the "prejudice" requirement of *Strickland.*

The instant record shows that the jury contained one juror who was, by his own admission, biased. That was tantamount to a denial of the right to trial by jury. It is no answer to say that the other 11 jurors were free of bias and all of them agreed upon a verdict of guilty. "A constitutional jury means twelve men as though that number had been specifically named; and it follows that, when reduced to eleven, it ceases to be such a jury quite as effectively as though the number had been reduced to a single person." *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 256, 74 L.Ed. 854 (1930).[2]

The instant situation, this court holds, is an example of the type the Court envisioned by the language in *Strickland:* "In certain Sixth Amendment contexts, prejudice is presumed." There was here a denial of the right to trial by jury. This fits the *Strickland* language, at 104 S.Ct. 2067, that "prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost."

■ The state also argues that movant waived the biased juror matter by not raising it on direct appeal, and cites such cases as *Smith v. State,* 684 S.W.2d 520 (Mo. App.1984), and *McGrath v. State,* 671 S.W. 2d 420 (Mo.App.1984). In *Smith* the claim of ineffective assistance of counsel was based on counsel's failure to move to quash the jury panel on grounds of intentional exclusion of blacks. In *McGrath* the claim of ineffective assistance of counsel was based on counsel's failure to object to the jury selection process. Those cases are distinguishable. Neither of them involved a situation where an admittedly biased person sat on the jury which returned the challenged conviction.

Moreover, even if movant, on the direct appeal from the jury trial, had attacked the verdict on the ground that venireman Cates was an incompetent juror, it is not clear that his appeal would have succeeded. His counsel had made no challenge to venireman Cates, and there was no record, as there now is in this Rule 27.26 proceeding, to show the reason Cates was not chal-

---

**2.** In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970), the Court held: "The twelve-man requirement cannot be regarded as an indispensable component of the Sixth Amendment," and upheld a criminal conviction in a Florida state court by a six-member jury.

lenged for cause. Although the judge at a jury trial has authority to act on his own initiative in excusing a juror, the general rule is that he has no duty to do so.[3] *State v. Overby,* 432 S.W.2d 277 (Mo.1968); *State v. Anderson,* 384 S.W.2d 591 (Mo. banc 1964); *State v. McWilliams,* 370 S.W.2d 336 (Mo.1963); *State v. Naylor,* 40 S.W.2d 1079 (Mo.1931); *State v. Woods,* 662 S.W. 2d 527 (Mo.App.1983); *State v. Johnson,* 637 S.W.2d 290 (Mo.App.1982); *State v. Dodson,* 595 S.W.2d 59 (Mo.App.1980); *State v. Marshall,* 571 S.W.2d 768 (Mo. App.1978); *State v. Lane,* 551 S.W.2d 900 (Mo.App.1977); *State v. Morrison,* 545 S.W.2d 376 (Mo.App.1976); *State v. Gamache,* 519 S.W.2d 34 (Mo.App.1975). In *McWilliams, Naylor, Woods, Dodson, Marshall,* and *Morrison,* the trial judge on his own initiative excused a juror. In *Overby, Anderson, Johnson, Lane,* and *Gamache,* the trial judge took no action with respect to a juror whose qualifications were not timely challenged. In all of those cases the convictions, on direct appeal, were affirmed.

It is also unlikely that movant's present claim of ineffective assistance of counsel would have succeeded or even have been entertained on his direct appeal from the jury case because, ordinarily, such a claim is properly handled in a Rule 27.26 proceeding rather than on a direct appeal from the criminal conviction. *State v. Williams,* 652 S.W.2d 102, 116[37] (Mo. banc 1983); *State v. Mitchell,* 620 S.W.2d 347, 348[3] (Mo. banc 1981).

It must be remembered that there was no *complete* transcript of the voir dire examination until the conclusion of the motion hearing, at which time it was compiled and admitted into evidence by agreement. The motion court did not clearly err in rejecting the state's argument of waiver in not raising the point on appeal because it could reasonably infer that it would have been futile to do so. Although the state argues that the defendant himself, as distinguished from his counsel, waived the error by not complaining of it in post-trial pleadings which he filed pro se, it cannot be said that the trial court clearly erred in ruling otherwise.

There is nothing in the instant record to suggest that counsel's failure to challenge venireman Cates for cause stemmed from any motive to "sandbag." Counsel's mistake, although flagrant, was unintentional. The right to effective assistance of counsel "may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2650[8], 91 L.Ed.2d 397 (1986).

This court holds that the judgment of the trial court granting relief on the ground under consideration is not clearly erroneous. The brief of movant on his cross-appeal states, "If this court affirms the decision of the hearing court, the issues raised herein will be moot." Accordingly, the appeal in No. 15188–2, Kenneth Presley, Mov-

---

**3.** ABA Standards for Criminal Justice Standard 15–2.5 (1986) reads, in pertinent part: "If the judge after examination of any juror is of the opinion that grounds for challenge for cause are present, the judge should excuse that juror from the trial of the case. If the judge does not excuse the juror, any party may challenge the juror for cause...."

The commentary under Standard 15–2.5 reads, in pertinent part: "... Although the standard emphasizes the responsibility of a judge to excuse prospective jurors when appropriate, this does not mean that a defendant may make no challenge and then later complain because the judge did not excuse a juror without challenge. Failure of the judge to act without defense challenge having been made is not in itself grounds for subsequent objection...."

The United States Supreme Court has at least implied that there may be a situation where the trial court, in the absence of a challenge to a venireman, must disqualify him of its own motion. In *Frazier v. United States,* 335 U.S. 497, 69 S.Ct. 201, 210, 93 L.Ed. 187 (1948), the court said: "Whether or not employment in the Treasury outside the Narcotics Bureau would constitute ground for challenge for 'actual bias,' such employment in the connections disclosed here affecting Moore and Root was not so obvious a disqualification or so inherently prejudicial as a matter of law, in the absence of any challenge to them before trial, as to require the court of its own motion or on petitioner's suggestion afterward to set the verdict aside and grant a new trial."

ant–Appellant, vs. State of Missouri, Respondent, is dismissed.

The judgment is affirmed.

CROW, C.J., and HOGAN, GREENE and HOLSTEIN, JJ., concur.

MAUS and PREWITT, JJ., file dissenting opinions.

MAUS, Judge, dissenting.

I dissent. I do so for two reasons. First, I do not believe the movant has shown "a reasonable probability" that but for the error of counsel the result of his trial would have been different as required by *Strickland*. Second, I believe that the movant waived the right to assert ineffective assistance of counsel by reason of that error.

The applicability of the principles upon which each of these reasons is based depends upon the extent of the infringement of the constitutional right involved. The failure of counsel to challenge juror Cates for cause is the infringement involved. That failure must be considered in context. For example, in the opening of the voir dire the trial court described the case and posed the following question to the panel with the following result:

THE COURT: Now, is there any of you that because of the nature of the case feel that you couldn't be fair and impartial?

(No one responds).

Thereafter, the prosecuting attorney emphasized the importance of a fair and impartial jury. Defense counsel then posed the following question with the following result:

Is there anyone else who perhaps feels the same way that they could not give my client a fair trial because of the nature of the charges against him?

(No one responds).

MR. SEIGEL: I take it by your silence everyone else, then, could give him a fair trial.

Thereafter were the questions asked and answers given that are quoted in the majority opinion. After the jury and an alternate were selected, the instructions they were given concerning their duties included the following: "Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case." MAI–CR 2d 2.01.

Under these circumstances, I do not believe the presence on the jury of one member who said he'd "be a little partial" against the movant to be tantamount to the total denial of the right to trial by jury. As hereafter developed, I do not believe Cates' presence establishes an infringement so egregious as to obviate movant's burden under the second prong of *Strickland*. Also, as hereafter developed, I do not believe failure to challenge juror Cates was such a fundamental infringement as to nullify the contemporaneous objection rule. The relationship between the two doctrines is discussed in *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2070, 80 L.Ed.2d at 700.

The motion court granted relief because it found counsel's error to be ineffective assistance of counsel contrary to the Sixth Amendment. It made no express finding concerning the requirement of prejudice as defined in *Strickland*. The majority opinion holds that the error per se entitles the movant to a vacation of his sentences without an examination of prejudice under the second prong of *Strickland*.

*Strickland* does recognize that an infringement upon the right to counsel may be so grave as to create a presumption of prejudice. It cites the "[a]ctual or constructive denial of the assistance of counsel altogether" and counsel burdened with an actual conflict of interest. Id., 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. The exception has been discussed as follows:

Notwithstanding this general standard, a defendant who demonstrates a complete denial of any assistance of counsel need not satisfy the second prong of the inquiry. Denial of the assistance of counsel may occur when an attorney is present but refuses to assume the role of

advocate, as well as when there is no appointment of counsel. See *Javor v. United States,* 724 F.2d 831 (9th Cir. 1984). 'Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost.' *Strickland,* 104 S.Ct. at 2067.

*State v. Harvey,* 692 S.W.2d 290, 292 (Mo. banc 1985). However, the general scope of the requirement of prejudice is expressed in the following language:

Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an effect on the defense.

*Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697.

The absence of prejudice as required by *Strickland* has been held to be decisive in innumerable cases. The cases include errors of counsel in the following respects. Failure to request an instruction on accomplice testimony. *Krist v. Foltz,* 804 F.2d 944 (6th Cir.1986). Failure to object to improper argument. *Estes v. State,* 111 Idaho 430, 725 P.2d 135 (1986). Outrageous behavior of counsel. *Ward v. State,* 461 So.2d 724 (Miss.1984). Failure to object to improper evidence and argument. *State v. Stirrup,* 469 So.2d 845 (Fla.App. 3 Dist.1985). Failure to present exculpatory evidence. *Orsini v. State,* 287 Ark. 456, 701 S.W.2d 114 (1985); *Estes v. State,* supra. Disruptive conduct resulting in counsel being held in contempt. *Rogers v. State,* 721 P.2d 805 (Okla.Crim.App. 1986). It is also held the failure to make an objection, which if overruled, would result in reversible error does not per se establish ineffective assistance. *State v. Stirrup,* supra.

The factor emphasized in the majority of such cases has been the possible decisive effect of the error when measured by the strength of the state's case. *Krist v. Foltz,* supra; *McAdoo v. United States,* 515 A.2d 412 (D.C.App.1986); *State v. Harper,* 218 Neb. 870, 359 N.W.2d 806 (1984). Such consideration has been expressed in a syntax of which the following are typical. "This overwhelming evidence of guilt makes the determination by the jury in this case thoroughly reliable. Accordingly, the errors of trial counsel—and they were many—were not so serious as to deprive Ward of a fair trial, a trial whose result is reliable." *Ward v. State,* supra, at 727. "Even if a successful motion for mistrial had been made, there is a reasonable probability that the outcome of a new trial would not have been any different in light of the overwhelming weight of the evidence." *State v. Stirrup,* supra, at 848.

The record affirmatively demonstrates, in light of the overwhelming evidence presented by the State, that even if counsel had acted ineffectively, Micko has not offered proof establishing a reasonable probability that the outcome of his trial would have been any different or that the factfinder would have had a reasonable doubt over his guilt.

*State v. Micko,* 393 N.W.2d 741, 747–748 (N.D.1986). "When we consider the entire record of defendant's trial, we cannot say that defense counsel's failure to object to prosecutorial remarks or to tender preferred jury instructions so prejudiced defendant that the outcome of the case would have been different had trial counsel been more thorough in these instances." *People v. Jones,* 148 Ill.App.3d 345, 101 Ill.Dec. 922, 928, 499 N.E.2d 510, 516 (1986).

No case has been cited or found analyzing in detail an error of counsel resulting in the selection of a juror such as Cates. However, in *Parker v. State,* 693 S.W.2d 640 (Tex.App. 9 Dist.1985), a juror said she thought the defendant should take the stand. In holding counsel's failure to challenge that juror did not result in reversible ineffective assistance of counsel, the court said: "Appellant has not shown—with Wil-

liford struck—that the result of the proceeding would have been different." Id. at 643. *State v. Hochstein,* 216 Neb. 515, 344 N.W.2d 469 (1984) is a similar case.

Obviously, the possible decisive effect of the presence of a partial juror must be measured with utmost caution. The bias of a juror may range from "a little partial" to an obdurate determination to vote guilty in spite of strong evidence to the contrary.

The failure of counsel to object to improper evidence or argument unfavorable to a defendant to some degree causes a jury to be partial against a defendant. The same is true of failure to produce admissible evidence favorable to a defendant. The influence of such an error against a defendant ranges from slight to devastating. Such an error can have a more profound effect than the presence of a juror who is a little partial. Yet, such professional errors are consistently held to provide a basis for relief only when they are found to result in prejudice to a defendant within the meaning of *Strickland.* The same requirement should be applicable when the error of counsel permitted one to serve as a juror who was a little partial against the movant.

The following is the basic requirement to establish prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

*Strickland* also declares the standards to be followed in determining the existence of such prejudice include the following: "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." Id., 466 U.S. at 695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id., 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698.

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id.

The context of Cates' answer has been noted. It establishes his sincerity. The transcript of the evidence resulting in the movant's convictions has been reviewed. It is sufficient to observe the evidence of his guilt is overwhelming. He does not contend otherwise. I find it impossible to believe a decisionmaker, reasonably conscientious, impartially following the instructions of the trial court, would have a reasonable doubt concerning the movant's guilt or assess less severe punishment than the jury in question. As stated, I would deny relief because the movant did not show a reasonable probability that but for counsel's error the result of his trial would have been different.

Furthermore, I do not believe the movant has the right to complain of the presence of Cates upon the jury. The total surrender or waiver of the right of trial by jury is generally considered to be so fundamental that it is effective only when the result of a deliberate bypass or an express waiver, that is an intentional abandonment of a known right as enunciated in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See Rule 27.01. However, it is generally held that the right to complain of the qualifications of a juror is preserved only when an objection is made as required by the contemporaneous objection rule. In the absence of a contemporaneous objection, such a complaint will be heard only upon a showing of cause for noncompliance and of actual prejudice resulting from a constitutional violation as delineated in *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a petitioner sought relief because of the admission of inculpatory statements allegedly made in the absence of an adequate Miranda warning without holding a preadmission hearing required by *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). The court based the

rejection of that contention upon the absence of a contemporaneous objection and the following reasoning:

We believe the adoption of the *Francis* [*v. Henderson*, 425 U.S. 536, 48 L.Ed.2d 149, 96 S.Ct. 1708 (1976)] rule in this situation will have the salutary effect of making the state trial on the merits the 'main event', so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing. There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas hearing a full airing of the federal constitutional claims which were not raised in the state proceedings. If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection.

*Wainwright v. Sykes*, supra, 433 U.S. at 90, 97 S.Ct. at 2508, 53 L.Ed.2d at 610. Also see *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Cases holding the contemporaneous objection rule applicable to the disqualification of a juror include the following. *Lollar v. State*, 422 So.2d 809 (Ala.Crim.App. 1982); *State v. Bravo*, 131 Ariz. 168, 639 P.2d 358 (Ariz.App.1981); *Buck v. State*, 151 Ga.App. 252, 259 S.E.2d 493 (1979); *Bias v. State*, 561 P.2d 523 (Okla.Crim.App. 1977), cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977).

The rule has been held applicable not only to an objection based upon known facts but also upon those discoverable with due diligence during voir dire. *Robinson v. Monsanto Co.*, 758 F.2d 331 (8th Cir. 1985); *Beasley v. State*, 337 So.2d 80 (Ala. Crim.App.1976); *Vaughn v. State*, 173 Ga. App. 716, 327 S.E.2d 747 (1985); *State v. Chattley*, 390 A.2d 472 (Me.1978); *Com-*

*monwealth v. Fudge*, 20 Mass.App. 382, 481 N.E.2d 199 (1985); *Smith v. State*, 651 P.2d 1067 (Okla.Crim.App.1982); *Southern Welding Works, Inc. v. K & S Const. Co.*, 286 S.C. 158, 332 S.E.2d 102 (1985). The general rule has been stated:

Although 'the guaranty of trial by jury insures to a defendant in a criminal case the right to have the facts in controversy determined by twelve impartial jurors [citation] ... this rule does not relieve a defendant of his duty to ascertain whether impartiality exists.' (*People v. Ward* (1965), 32 Ill.2d 253, 258–59, 204 N.E.2d 741, 744, cert. denied (1966), 384 U.S. 1022, 86 S.Ct. 1947, 16 L.Ed.2d 1026.)

*People v. Escobedo*, 151 Ill.App.3d 69, 104 Ill.Dec. 603, 615, 502 N.E.2d 1263, 1275 (1986). The general rule is observed in this state. *Herron v. State*, 614 S.W.2d 715 (Mo.App.1981); *Benson v. State*, 611 S.W.2d 538 (Mo.App.1980); *Thompson v. State*, 569 S.W.2d 380 (Mo.App.1978).

Of course, the obligation to pose a timely objection generally rests upon counsel. A failure to do so may constitute ineffective assistance of counsel, as held in the majority opinion. Indeed, ineffective assistance of counsel may constitute the cause for a procedural default within the meaning of *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and *Francis v. Henderson*, supra. A concern about counsel's failure to challenge a partial juror has been expressed in the following language. "If this is developed on voir dire an aggressive attorney for any defendant could then fail to challenge and probably the State would not challenge nor would the judge, sua sponte, challenge or remove the venireperson. Hence, built-in reversible error would have been calculated and invited by the defendant's attorney." *Parker v. State*, supra, 693 S.W.2d at 642.

In some circumstances the spirit of the contemporaneous objection rule imposes a duty upon a defendant to personally voice an objection upon the basis of facts known to him. Illustrative cases include the following. In *People v. Escobedo*, supra, a juror was excused upon a peremptory challenge by the defendant. Nevertheless, that

person served on the jury and was elected foreperson. On appeal the defendant contended that irregularity vitiated his conviction. The state contended the defendant waived the same by failing to raise the objection before the trial court. The court rejected the defendant's contention.

> After consideration of the jurisprudence of this State and other jurisdictions, we conclude that the defendant had a duty to ascertain whether the jury as impaneled was properly selected and to advise the trial court of any infirmity in the jury as sworn at the earliest opportunity. Regardless of whether the challenged prospective juror remained with the selected jurors during the court's voir dire of remaining venire and was therefore visible for defense to recognize, there is nothing in the record which indicates that *defendant or his attorney* was prevented from viewing Mrs. Anderson as she participated in the jury's hearing of the evidence at trial. Indeed, before the jury's verdict was announced, Mrs. Anderson advised the trial court that one of the verdict forms had been mistakenly signed. Under the circumstances of this case, we determine that defendant waived review of this issue by neglecting to recognize and call to the court's attention the fact that a prospective juror whom defendant had peremptorily challenged was in fact in service upon the jury.

*People v. Escobedo,* supra, 104 Ill.Dec. 615, 502 N.E.2d at 1275 (emphasis added).

In *Spencer v. Hopper,* 243 Ga. 532, 255 S.E.2d 1 (1979), a defendant by a pro se motion challenged the array of jurors. The motion was not then passed upon. Upon the completion of voir dire, defense counsel informed the court he would not insist upon the motion. In a habeas corpus proceeding the court refused to consider the defendant's challenge.

> However, Spencer argues that since his motion was filed pro se, it could not be waived absent the trial judge questioning the defendant directly as to his wishes in this matter. But this overlooks the rule that whether or not to proceed with such a motion is a decision of trial tactics in

counsel's hands. See *Reid v. State,* 235 Ga. 378, 379, 219 S.E.2d 740 (1975). Defense counsel refused to allow the district attorney to direct the question to the defendant personally and although the defendant had spoken out previously, he evidenced no objection to his attorney's refusal to pursue the motion at that time. It would appear that the *defendant and his attorney* were satisfied with the jury which had been selected, at least with the panels as composed prior to striking.

Id. at 3–4 (emphasis added).

In *State v. Chattley,* supra, a defendant had knowledge of a confrontation with a juror which was not disclosed upon voir dire. On appeal the defendant's objection to the court's failure to strike that juror was rejected. "It is beyond dispute that at the time of the voir dire defendant Chattley had knowledge of the altercation in which he had himself participated with Mr. Hamor. His failure to raise the objection at that time precludes his raising it at a later date." Id. at 477.

In *Lollar v. State,* supra, the defendant had personal knowledge of a juror being arrested for a drug offense. This fact was not revealed during voir dire. The defendant first told his attorney after the jury returned a guilty verdict. The defendant's point on appeal based upon the disqualification of this juror was rejected. "[T]he defendant possessed specific information which conflicted with Ms. Keith's failure to respond and which demanded, upon the exercise of reasonable and due diligence, further inquiry. The diligence required to prevent a waiver must be exercised by defense counsel *and the defendant.*" Id., 422 So. 2d at 812 (emphasis added).

The duty of a defendant to object to the qualifications of a juror is similar to the duty of a defendant to object to misconduct by a juror.

> It is well-established that where misconduct of jurors is first presented in the motion for new trial, an affirmative showing must be made that *both defendant and his attorney* were ignorant of

the misconduct until after the trial. *State v. Turley,* 452 S.W.2d 65, 69 (Mo. 1970); *State v. Reeder,* 394 S.W.2d 355, 357 (Mo.1965); *State v. Flinn,* 96 S.W.2d 506, 513 (Mo.1936); *State v. McGee,* 336 Mo. 1082, 1093, 83 S.W.2d 98, 104–05 (1935); *State v. Gilmore,* 336 Mo. 784, 789, 81 S.W.2d 431, 433 (1935); *State v. McVey,* 66 S.W.2d 857, 859 (Mo.1933); *State v. Palmer,* 581 S.W.2d 952, 953 (Mo.App.1979); *State v. Bollinger,* 560 S.W.2d 606, 608 (Mo.App.1978); *State v. Warren,* 469 S.W.2d 662, 663 (Mo.App. 1971). The reason for the rule is that a defendant is not entitled to wait until the verdict is in, gambling on a favorable verdict, then seek a new trial if a verdict of guilty is returned.

*State v. Brown,* 599 S.W.2d 498, 502 (Mo. banc 1980), cert. denied, 449 U.S. 985, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980) (emphasis added).

Other cases also recognize that when a defendant is aware of a decision made by his counsel, the defendant may waive his right to complain by acquiescence in that decision. "The trial court gave defendant's attorney a clear chance to act in his capacity as spokesman for defendant and the person in charge of defendant's case. Defense counsel made a trial strategy decision and moved on it without any apparent protest from defendant." *State v. Fitzpatrick,* 676 S.W.2d 831, 836 (Mo. banc 1984). "Since we hold that petitioner neither personally waived his right *nor acquiesced* in his lawyer's attempted waiver, the judgment of the Supreme Court of Ohio must be and is reversed...." *Brookhart v. Janis,* 384 U.S. 1, 8, 86 S.Ct. 1245, 1249, 16 L.Ed.2d 314, 319 (1966) (emphasis added). In *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), a defendant's failure to object to appearing in prison garb was held to bar a subsequent assertion of error on that basis. "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." *Hernandez v. Beto,* 443 F.2d 634, 637 (5th Cir.1971), cert. denied, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971). Also see *Murch v. Mottram,* 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), in which a defendant was bound by his counsel's decision not to assert a basis for relief in a post-conviction proceeding. In so holding the court had the following observation:

> Concededly, Mottram testified at the hearing in the District Court that he did not intend to waive his constitutional attacks on the underlying 1960 convictions. But if a subjective determination not to waive or to abandon a claim were sufficient to preclude a finding of a deliberate bypass of orderly state procedures, constitutionally valid procedural requirements, such as those contained in the Maine statute requiring the joining of all bases for attack in one proceeding, would be utterly meaningless.

*Murch v. Mottram,* supra, 409 U.S. at 46, 93 S.Ct. at 74, 34 L.Ed.2d at 199.

In the underlying case the movant was in the courtroom throughout his trial. The record demonstrates he was aware of the response of juror Cates and its significance. In view of counsel's misconception, the movant's position was that of a defendant with personal knowledge of a juror's infirmity or misconduct when his counsel had no such knowledge. With his knowledge and appreciation of the significance of Cates' response, the movant was under a personal obligation to exercise due diligence to voice an objection to the qualifications of juror Cates. A defendant with such knowledge and appreciation should not be permitted to "sand bag" the finality of a trial by first voicing an objection after a verdict of guilty. "To permit such a challenge to be pursued now would simply mean that no one would make a jury challenge until after they were convicted and that conviction was affirmed on appeal." *Spencer v. Hopper,* supra, 255 S.E.2d at 4.

If the movant did not voice an objection to Cates' continued presence to counsel, he failed to exercise due diligence. Movant testified that in open court he voiced such an objection to counsel and counsel refused to pursue it. The transcript of the trial proceeding conclusively rebuts this assertion. Moreover, that record establishes the movant, with knowledge and appreciation

of the same, acquiesced in counsel's actions. His subjective intent cannot now refute that acquiescence. The movant's failure barred consideration of the disqualification of juror Cates on direct appeal. That being so, movant cannot now inject vitality into an unexpressed objection under a charge of ineffective assistance of counsel.

I have examined the points raised by movant in his cross-appeal. As did the motion court, I find no merit in them. I would reverse the judgment of the trial court and enter judgment denying movant's motion under Rule 27.26.

PREWITT, Judge, dissenting.

I respectfully dissent. The majority opinion does a thorough and admirable job of analyzing the authorities and the problems in a case such as this, but I disagree with the conclusion reached.

Certainly movant's counsel erred. If a challenge for cause had been made it would have been error not to have excused venireman Cates. However, I believe movant has failed to meet the applicable burden for relief established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

I agree that as indicated in *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067, there are situations where prejudice from ineffective assistance of counsel can be "presumed". Counsel's error resulted in a juror serving who said he was a "little partial" against movant. That should not be enough for a presumption of prejudice entitling movant to a new trial where, as here, counsel was otherwise effective and in my view movant received a fair trial although, as is always the case, not a perfect one.

I would reverse because movant failed to satisfy the standard in *Strickland* for him to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. There is no basis to believe that the presence of juror Cates probably affected the outcome. On the evidence here it is highly unlikely that counsel's error changed the result.